UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

**T.H. and E.H.** individually, and on behalf of their child, R.H., a minor,

Plaintiffs,

    -against-

**West Hempstead Union Free School District**

Defendant.
_____X

**Case No. 2:25-150-NJC-JMW**

Individuals with Disabilities Education Act;
N.Y. Educ. Law § 4401 *et seq*.

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Richard F. Corrao
**Law Office of Susan J. Deedy & Associates**
1600 Stewart Avenue, Suite 609
Westbury, New York 11590
(516) 221-8133
Rcorrao@Susandeedylaw.com

Benjamin J. Hinerfeld
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360

1528 Walnut Street, Suite 1100
Philadelphia, PA 19102

447 Broadway 2nd Floor
 New York, NY 10013

Ben@hinerfeldlaw.com

1

## I. INTRODUCTION

The SRO has to earn deference. It did not earn it here. Parents have argued that the District failed to prove that R.H. made more than *de minimis* progress,[1] that R.H.'s IEPs were not adequately individualized and were unambitious, and that the SRO's decision was neither thorough nor careful. The thread throughout the District's response appears to be that R.H. received a FAPE because the SRO said so.[2] In falling back on this argument, however, the District does not truly engage Parents' critiques of the SRO's decision.

Evaluating whether the SRO's decision is well or poorly-reasoned requires the context of the full record. As Parents explain in their opening briefs and here, the SRO's factual findings and arguments do not hold up against the full record.

## II. REPLY ARGUMENT

**1. The District has never shown that R.H. made meaningful progress in reading because she never made meaningful progress in reading.**

Parents argued in their opening that the IHO correctly held that R.H. made no measurable progress in reading and needed a far more intensive reading program. While Parents' argument probes the details of educational records – ostensibly the purview of CSEs, IHOs and SROs – the records at issue here are not beyond the Court's or any educated reader's understanding. They are elementary school worksheets with handwritten notations far less complicated than those found on a typical attorney's markups on a brief.[3] To show R.H.'s minimal progress, Parents pointed to her disheartening running records assessment in the fall of 2021 – her inability to read "What a nice

---

[1] Parents refer the Court to their opening brief (PLMOL) and brief in opposition to the District's motion for their complete argument on the merits.

[2] It makes this argument most clearly in its opposition brief: "R.H.'s progress is further supported by the SRO's finding that her progress was satisfactory and the SRO's rejection of Plaintiffs' claims that the services, supports and aides recommended by the CSE were insufficient to provide a meaningful educational benefit to R.H." Mem. of Law in Opp. on behalf of Defendant(s) West Hempstead Union Free Sch. Dist. (Dist. Opp.) at 17.

[3] *See* DE259-331.

2

big house!"[4] – which cast doubt on the District's June 2021 progress report that she had "achieved" her 2020-2021 decoding goal.[5] Even taking that June 2021 progress report at face value, the question remains: What exactly did she achieve? As the IHO held, the decoding goal was so vague that there is no way to know what skills she was to be taught.[6] The SRO never addressed the IHO's criticism of R.H.'s decoding goal, merely noting that R.H. in fact had three reading goals and then deeming them appropriate in conclusory fashion.[7]

Parents then explained how the SRO speculated beyond the record to conclude that R.H.'s significant fluctuation in reading was due to "attention, focus, and stamina concerns."[8] The District never made that argument to the SRO. To the contrary, it argued (in the context of speech language therapy) that R.H.'s attention improved significantly during the 2020-2021 school year.[9]

The SRO's unsolicited speculation about R.H.'s reading struggles thus appears to be an effort to harmonize three incompatible factual claims: (1) On June 11, 2021, R.H. was reportedly reading the level G story *Bedtime for Nick*;[10] (2) A few months later, on September 22, 2021, she could not read *Bedtime for Nick*,[11] level F story *Anna's New Glasses*,[12] or level E story *The Loose Tooth*,[13] and was back to reading level D story *The Nice Little House*, with significant errors, as discussed above;[14] and (3) R.H. reportedly did not regress during the summer of 2021.[15]

---

[4] PLMOL at 9-10 (citing DE308).
[5] *Id*. (Citing Ex. D-22, DE196).
[6] I-11.
[7] PLMOL at 21 (citing SD-20).
[8] *Id*. at 26 (citing SD31-32).
[9] P-21.
[10] DE286-90.
[11] DE291-97.
[12] DE298-99.
[13] DE300-05. She *was* apparently able to read *The Loose Tooth* in January 2021. See DE272-77.
[14] DE306-09.
[15] The SRO held that R.H. was not entitled to extended school year (ESY) services because she had showed no signs of "substantial regression" that would have warranted ESY programming. SD-32.

3

Occam's razor suggests either (1) that R.H. was not actually reading at level G in June 2021 (meaning, as the IHO held, the District's June 2021 progress report was inaccurate) or (2) that she substantially regressed over the summer (meaning she *could* have qualified for ESY services). As noted above, because the SRO rejected both of these obvious explanations, he supplied Option (3): R.H.'s reading naturally fluctuated due to her attention, focus and stamina concerns. While this finding may resemble an exercise of "educational expertise" to which the Court owes institutional deference, it is the type of finding – result driven, logically inconsistent, and unsupported by the actual record – that courts routinely reject.

Rather than address Parents' arguments, the District says that R.H. did make meaningful progress. It notes for example that R.H.'s teacher testified that she was proud of her progress.[16] But a teacher's expression of pride, while kindly, is not evidence of meaningful, measurable academic progress. The District also notes that R.H.'s teacher told Parents that given "expectations" for R.H., she "was doing quite well academically."[17] Rather than show that R.H. made meaningful progress, this statement reveals that the District indeed expected no more than *de minimis* progress from R.H.

More strangely, the District takes one sentence from the IHO's decision out of context to claim that *she* held that R.H. had, in fact, made satisfactory progress in reading.[18] Of course, she found the opposite. While she wrote that the District's progress report "indicates that the Student was overall progressing satisfactorily,"[19] she then explained at length why she rejected that report. She noted that it did not reflect the amount of prompting R.H. required.[20] She inserted a multi-

---

[16] Dist. Opp. at 17 n. 9.
[17] Dist. Opp. at 17 n.9.
[18] *Id*. at 19 (citing I-14). The SRO drew the same clearly erroneous inference about the IHO's finding. SD-6.
[19] I-14
[20] *Id*.

4

year, chronological table showing how R.H.'s reading level "fluctuated and not necessarily in an upward manner."[21] She challenged the fidelity of the District's reading assessments, noting that its rapid-succession-testing at the end of two consecutive school years appeared to be "a strategy to get the level up."[22] She concluded by noting with disapproval that in three years, R.H.'s reading had only improved from kindergarten to mid-first grade. Thus, contrary to the District's and the SRO's interpretation, the IHO unequivocally found that R.H. did not make satisfactory progress.

2. **No issues Parents raised in their brief are waived. They pled all issues in their Due Process complaint, litigated them at trial, and briefed them to the IHO.**

The District cites a liberal IDEA pleading rule to argue that several issues Parents raised were "not preserved for judicial review."[23] Specifically, it says that Parents cannot argue: (1) that the District's 12:1:1 program offered for the 2022-2023 was inappropriate due to its size because the IHO and SRO did not expressly rule on that issue; and (2) that the District's failure to address R.H.'s seizure disorder was a procedural violation of the IDEA.[24]

The Second Circuit – in a case the District cites – explained that the IDEA's pleading rule prevents sandbagging – something that the District does not even allege here:

> We hold that the waiver rule is not to be mechanically applied. The key to the due process procedures is fair notice and preventing parents from "sandbagging the school district" by raising claims after the expiration of the resolution period. We note that the IDEA itself contemplates some flexibility. The statute does not require that alleged deficiencies be detailed in any formulaic manner, and the waiver rule limits only what may be raised at the due process hearing.[25]

---

[21] *Id*. at 5-16.
[22] I-16. The District contends that Parents make this claim "without any evidence in the record." Dist. Opp. at 18. But it is the IHO, citing specific evidence, who made this finding, not Parents. Importantly, the SRO ignored the IHO's finding about the District's conspicuous end-of-year assessment practices.
[23] Dist. Opp. at 2-7 (citing *B.P. v. N.Y.C. Dep't of Educ.*, 634 Fed. Appx. 845, 849 (2d Cir. 2015)).
[24] *Id*.
[25] *C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 168, 187 n.4 (2d Cir. 2012); 20 U.S.C. § 1415(b)(7)(A)(ii); § 1415(f)(3)(B); 34 C.F.R. § 300.511(d)).

In their complaint, Plaintiffs raised the issues the District now says are waived. Regarding class size, they alleged:

> 116. Failure to Offer Program Tailored to Student's Individual Needs. By failing to provide R.H. a program tailored to her unique needs of ***providing a small class size with students at her cognitive and achievement levels***, with proper support embedded in her curriculum throughout the day, the District did not provide her the "personalized instruction" and "individualized consideration of and instruction for each child" mandated by the IDEA.[26]

The Complaint also put the District on notice that R.H.'s seizure disorder was at issue:

- R.H. has also suffered from febrile seizures, has a history of night walking/wandering that continues to present, and has been described as having body weight-related difficulties being in the 97th percentile for weight and in the 5th percentile for height.[27]

- R.H. has suffered seizures including at least two that lasted approximately 40 minutes, typically at times when she fell ill. The last such seizure occurred in or about 2018, requiring emergency hospital care.[28]

- Although the District was aware of R.H.'s history of seizures, the CSE failed to place a special alert on her IEP.[29]

- The resulting August 31, 2022 IEP again failed to document or provide special alerts concerning R.H.'s seizure history.[30]

- Prong I: Failures and Deprivations: Failure to Document Special Alert regarding Student seizures.[31]

In its answer to Parents' Due Process complaint, the District wrote: "The District denies each and every allegation set forth in the Complaint, denies and opposes the relief sought in connection therewith, and leaves all questions of law and legal conclusions to the Impartial Hearing Officer."[32] This blanket denial presumably included paragraphs 6, 12, 40, 78, 111, and

---

[26] S-13, ¶ 116 (emphasis added) (citation omitted).
[27] PE4, ¶ 6.
[28] PE5, ¶ 12.
[29] PE8, ¶ 40.
[30] PE11, ¶ 78.
[31] PE15, ¶ 111.
[32] S-18.

6

116. The District should not be heard to complain of lack of notice where it failed to respond individually to Parents' detailed factual allegations.[33]

In any event, both issues arose at the hearing. For example, Parents' expert, Dr. Erin McDonough, wrote in her report: "With respect to placement, [R.H.] has not made adequate progress in acquiring basic academic skills in the West Hempstead School District. [R.H.] requires a smaller setting than her current 12:1:1 classroom due to her memory and language impairments."[34] In Parents' closing brief to the IHO, they argued: "Here, the evidence is overwhelming that [R.H.'s] repeated 12:1:1 placement, which apparently doubled as a non-mandated reading class for much of the time at issue, was too large and distracting for her to access the curriculum and make meaningful progress."[35] They also made that argument in response to the District's request for review.[36]

The District was on notice to defend its 12:1:1 placement. In fact, its argument is self-defeating, citing its own trial exhibits to contend that the 12:1:1 program was the most appropriate setting for R.H.[37] At trial, counsel for the District solicited testimony about class size on direct exam, asking third grade teacher Teresa Moore:

> Q. So the committee makes certain recommendations in terms of programming, right? So one of those is to continue R.H. in the special class 12-1-1 for 4th grade, right?
>
> A. Yes.
>
> Q. What was your position on that?

---

[33] This is a common, goldilocks pleading criticism from defendants: Include too few facts and the defendant labels the complaint deficient; include too many and the complaint is insufficiently "concise." In its Answer, the District seemingly makes both arguments in one sentence: "The Parent's claims and allegations are conclusory, speculative, vague and without merit and do not otherwise satisfy their threshold burden pursuant to Subsection (b)(7)(a) of [IDEA section 1415] to provide a 'clear and concise' statement of the alleged problem." S-19, ¶ 5.
[34] PE65.
[35] S-66.
[36] P88.
[37] Dist. Br. at 5.

7

A. I agreed. I thought it was the best place for her.

Q. Why?

A. Small class size but not too small so she could be able to socialize. It was less distractions but, again, not too small so she would have to filter out some of the noise and she could be provided the curriculum but individualized for her.[38]

Reviewing the trial record, the IHO expressly noted that "Parent conveyed her concern about the size of the classroom for her child."[39] She then found that the District's offer of a shared aide for R.H. – in response to Parents' class size concerns – did not address her inattentiveness because it continued her over-dependence on adult prompting.[40]

Moreover, whether the IHO or SRO addressed class size directly is not relevant. Courts have repeatedly held that after parties prevail before an IHO, they do not have to appeal to the SRO to challenge rulings that do not aggrieve them.[41] Thus, even if IHO Brandow had not ruled on the issue of class size, Parents prevailed before her on the issue of whether the District offered R.H. a FAPE, and would not have been aggrieved by her decision.

Regarding seizures, Dr. McDonough wrote: "It is recommended that the [Parents] pursue genetic testing to determine whether a specific genetic disorder contributes to R.H.'s constellation of seizures and neuropsychological weaknesses."[42] Parents introduced as an exhibit R.H.'s genetic testing results, which detailed her seizure-like episodes.[43]

---

[38] T90:2-17.
[39] I-19.
[40] *Id*.
[41] *See, e.g., B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*, 2025 U.S. Dist. LEXIS 14032, at *18 (E.D.N.Y. Jan. 27, 2025) (collecting cases).
[42] PE66.
[43] PE73.

8

As with the issue of the 12:1:1 class size, the District was on notice that Parents were alleging violations related to R.H.'s seizure history. For both issues, whether the IHO and SRO expressly addressed them does not affect this Court's ability to do so.

3. **The District's effort to distinguish cases proves their overall relevance here.**

The District refers to several cases cited in Parents' opening brief, arguing they are distinguishable. For each case, the District either misstates the holding or draws an irrelevant distinction. In *A.W. v. New York City Department of Education*,[44] the court reversed the SRO for three separate reasons: (1) the SRO's opinion drew an logically invalid inference that M.W.'s success in a small classroom would translate to a larger classroom; (2) he drew a logically invalid inference that, because progress reports did not rule out M.W.'s ability to thrive in a larger class, he could in fact make progress in a larger class; and – contrary to the District's seeming suggestion that Parents made up a holding in *A.W.*[45] – (3) the SRO "uncritically relied" on one witness's testimony that favored the district's position, but "did not engage in any critical analysis, or any analysis for that matter, of the various issues raised" by a contradicting witness.

The District cites *M.H. v. New York City Department of Education* and *S.B. v. New York City Department of Education* for the same proposition as Parents: the SRO cannot simply make conclusory statements that goals are appropriate without explaining why.[46] It argues with respect to *M.H.*: "It is not that the SRO failed to point out evidence that he disagreed with, it is that the SRO in *M.H.* did not discuss the evidence that got him to his conclusion."[47] But the district court in *M.H.* did in fact point out the SRO's failure to consider confounding evidence:

> Nevertheless, the SRO's determination cannot be considered "thorough and careful" because the SRO considered only P.H.'s annual academic goals, whereas

---

[44] *A.W.*, 287 F. Supp. 3d 420, 434-35 (S.D.N.Y. 2018).
[45] Dist. Opp. at 12-13.
[46] *Id.* (citing *M.H.*, 685 F.3d 217, 249 (2d Cir. 2012)). PLMOL at 4-7, 18 n.101.
[47] *Id.*

9

> the IHO based her decision on both the annual academic goals and the short-term objectives-- with an emphasis on the short-term objectives…. By reversing only on the basis that the annual goals were not generic, the SRO failed to consider the IHO's more important finding that the short-term objectives were generic.[48]

Regardless, the District does not challenge the basic legal precept as issue here: When an SRO fails to grapple with contrary evidence, his or her decision is not thorough and careful.[49]

### III. CONCLUSION

Parents have argued that the SRO's decision lacks the basic elements of a well-reasoned, "thorough and careful" decision. Most fundamentally, it lacks the elements of completeness, balance and fairness. It denies R.H. and her parents "due process" in the most basic sense because it disregards the record they developed through robust IDEA procedures written precisely to give R.H. a voice in the face of government discrimination. Parents respectfully ask the Court to consider the entire record to ensure they and R.H. are afforded due process.

**WHEREFORE** for the reasons stated in this brief, their opening brief, and their brief in opposition to the District's motion, Parents respectfully request that the Court GRANT their Motion for Judgment on the Administrative Record.

Dated: February 27, 2026                                Respectfully submitted,

Richard F. Corrao                                       Benjamin J. Hinerfeld
**Law Office of Susan J. Deedy &**                      **Law Office of Benjamin J. Hinerfeld**
**Associates**                                          9 Stoddard Street
1600 Stewart Avenue, Suite 609                          Plymouth, MA 02360
Westbury, New York 11590                                1528 Walnut Street, Suite 1100
(516) 221-8133                                          Philadelphia, PA 19102
Rcorrao@Susandeedylaw.com                               447 Broadway 2nd Floor
                                                        New York, NY 10013
                                                        (508) 591-0385
                                                        Ben@hinerfeldlaw.com

---

[48] *M.H. v. N.Y.C. Dep't of Educ.*, 712 F. Supp. 2d 125, 154 (S.D.N.Y. 2010).
[49] *C.L. v. N.Y.C. Dep't of Educ.*, 2013 WL 93361, at *7 (S.D.N.Y. Jan. 3 2013).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

**T.H. and E.H.** individually, and on behalf of their child, R.H., a minor,

Plaintiffs,

-against-

**West Hempstead Union Free School District**

Defendant.
_____X

**Case No. 2:25-150-NJC-JMW**

Individuals with Disabilities Education Act;
N.Y. Educ. Law § 4401 *et seq*.

## CERTIFICATE OF SERVICE

I, Benjamin J. Hinerfeld, certify that on February 27, 2026, served *via electronic mail* the above = Reply in Further Support of their Motion for Judgment on the Administrative Record, on John Sheahan, Esq., counsel for Defendant, West Hempstead Union Free School District.

| | |
|---|---|
| Dated: February 27, 2026<br>Plymouth, Massachusetts | /s/ Benjamin J. Hinerfeld<br>Benjamin J. Hinerfeld<br>**LAW OFFICE OF BENJAMIN J. HINERFELD**<br>Attorneys for Plaintiffs<br>9 Stoddard Street<br>   Plymouth, MA 02360<br>1528 Walnut Street, Suite 1100<br>   Philadelphia, PA 19102<br>447 Broadway 2nd Floor<br>   New York, NY 10013<br>Office (508) 591-0385<br>Cell (215) 694-7432<br>Fax (215) 689-2423<br>Ben@hinerfeldlaw.com |